ORIGINAL          SEALED          FILED-USDC-NDTX-DA
'24 JAN 23 PM4:50



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,

v.

**Austin Case #: 1:24-mj-00043-SH**
CASE NO.

3 - 24 C R 0 0 2 0 - L

**FILED**

January 30, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ LRT _____
DEPUTY



1



JIAN SUN (40),
a/k/a Jay Sun



## INDICTMENT

The Grand Jury Charges:

At all times material to this indictment:

### Introduction

1.      Defendant ▮▮▮▮▮▮▮▮▮▮ was the leader of a criminal organization operating primarily in Dallas, Texas, and the surrounding area. The criminal organization was operating a large-scale marriage fraud scheme in which the facilitators arranged fraudulent marriages to illegally obtain admission and immigrant status for noncitizens in the United States.

2.      A "fraudulent" marriage was a marriage that was entered into for the primary purpose of circumventing United States immigration laws.

3.      Defendant ▮▮▮▮▮▮▮▮▮▮ and his coconspirators were engaged in criminal conduct, including, but not limited to, marriage fraud and immigration fraud.

4.      Other leaders, organizers, and facilitators of this criminal organization included defendants ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ collectively, "the marriage facilitators," and others known and unknown to the Grand Jury.

5.      Defendant ▮▮▮▮▮▮▮▮▮ is the daughter of defendant ▮▮▮▮▮▮ ▮▮▮▮▮▮

6.      Defendant ▮▮▮▮▮▮▮▮▮ was the owner of defendant ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, located at 3306 West Walnut Street, Suite 405, Garland, Texas 75042, which was in the Northern District of Texas. ▮▮▮▮▮▮▮▮▮▮

4

purported to be a "legal services" business, which provided notary and other document preparation services.

7.    According to documents filed with the Texas Office of the Secretary of State, defendant                          was the President, Director, and registered agent for defendant                              from 2000 to 2011.

8.    Defendant                          is married to defendant

### Immigration Procedures

9.    The United States Citizenship and Immigration Services ("USCIS") was a government agency, within the United States Department of Homeland Security, that oversaw lawful immigration to the United States. The USCIS provided the procedures for United States citizens and permanent residents to acquire permanent resident status for their immigrant spouses, commonly known as applying for a "Green Card".

10.   The USCIS was responsible for deciding whether foreign nationals were eligible for lawful permanent resident status and United States citizenship. As part of this process, the USCIS reviewed applications and petitions, conducted interviews, obtained, and reviewed supporting documentation, and then, approved or denied applications and petitions. To perform this function, the USCIS required persons to submit various immigration forms. These forms included:

a.    Form I-130, Petition for Alien Relative;

5

b.     Form I-485, Application to Register Permanent Residence or Adjust Status;

c.     Form I-751, Petition to Remove Conditions on Residence;

d.     Form I-864, Affidavit of Support Under Section 213A of the INA;

e.     Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant;

f.     Form N-400, Application for Naturalization; and

g.     Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

11.     A noncitizen may seek to obtain lawful permanent resident status in the United States based upon his/her valid marriage to a United States citizen.

12.     The United States citizen in such a marriage who applies for an immigration benefit is hereinafter referred to as a "petitioner spouse." The noncitizen in such a marriage who potentially would receive the immigration benefit because of that marriage is referred to as the "beneficiary spouse."

13.     Form I-130 - To accord the beneficiary spouse "immediate relative" status, a petitioner spouse must file a Form I-130 with the USCIS. In support of the I-130, among other requirements, a petitioner spouse must submit the marriage certificate and indicate where both the petitioner and beneficiary spouse reside and intend to reside.

14.     Form I-485 - To adjust the beneficiary spouse's immigration status to lawful permanent resident, the beneficiary spouse must file a Form I-485 with USCIS. The Form I-485 is often filed concurrently with the Form I-130 and jointly the documents are commonly referred to as an "Adjustment of Status" ("AOS") packet. In the Form I-485 and Form I-130, the beneficiary spouse and petitioner spouse must provide their

6

complete marital and residential history for the past five years. The beneficiary spouse must also indicate in the Form I-485 if he/she has:

a.   "EVER submitted fraudulent or counterfeit documentation to any U.S. Government official to obtain or attempt to obtain any immigration benefit, including a visa or entry into the United States";

b.   "EVER lied about, concealed, or misrepresented any information on an application or petition to obtain a visa, other documentation required for entry into the United States, admission to the United States, or any other kind of immigration benefit"; and

c.   "EVER committed a crime of any kind (even if you were not arrested, cited, charged with, or tried for that crime)."

15.   There is no waiting period (other than processing) for the beneficiary spouse to adjust his/her status to a lawful permanent resident. If the Form I-130 and Form I-485 are approved, the beneficiary spouse is accorded conditional permanent resident status. The conditional permanent resident status expires after two years.

16.   Form I-864 -  In connection with the AOS packet, the petitioner spouse must also file a Form I-864, signed under penalty of perjury, to establish the beneficiary spouse has adequate means of financial support and is not likely to rely on the United States government for financial support. In support of a Form I-864, the petitioner spouse must submit employment records, asset records, and tax returns of himself/herself, his/her spouse, his/her household members, and additional sponsors, if needed, to establish that their collective income is at least 125 percent of the current Federal poverty guidelines.

17.     If a petitioner cannot meet the minimum income requirement, a joint sponsor may be enlisted to meet the statutory threshold. The joint sponsor need not be related to the beneficiary spouse. A joint sponsor must complete a separate Form I-864 signed under penalty of perjury. The joint sponsor must also have income that is at least 125 percent of the Federal poverty guidelines. When filling out the Form I-864, a joint sponsor is required to fill in their household size, which must include spouses, biological and adopted children living with the sponsor, other dependents on the sponsor's federal income tax return, the beneficiary and any derivative applicants intending to immigrate within six months, and anyone the sponsor is supporting in the United States on a different Form I-864—unless the obligation has terminated. By signing and submitting the Form I-864, the joint sponsor enters into a binding contract with the United States to accept legal responsibility for rendering financial support to a family-based green card applicant.

18.     Form I-751 - Within 90 days of the conditional permanent resident status's expiration, and to have the conditions on the beneficiary spouse's permanent resident status removed, the petitioner spouse and the beneficiary spouse must file a Form I-751 with the USCIS. Absent certification that the United States citizen spouse is deceased, the marriage ended in divorce, the noncitizen spouse suffered domestic violence from the United States citizen spouse, or the noncitizen spouse would suffer an extreme hardship if deported, the petitioner and beneficiary spouses submitting the Form I-751 must certify, under penalty of perjury, that the marriage was entered in accordance with the laws of the place where the marriage took place and was not for the purpose of

8

procuring an immigration benefit.

19.     Form I-360 - Pursuant to the Violence Against Woman Act ("VAWA"),
foreign nationals may self-petition for a Green Card as the spouse of an abusive United
States citizen, or lawful permanent resident, without the abusive spouse filing a
corresponding Form I-130. VAWA allows victims of battery or extreme cruelty,
regardless of their gender, to seek safety and independence from abusers who otherwise
control the abused spouse's ability to obtain lawful resident status in the United States.
Petitioners for resident status under VAWA are required to submit a Form I-360, with
documentation of a legitimate, qualifying legal relationship to an abusive United States
citizen or lawful permanent resident, and evidence of abuse committed by the citizen or
legal permanent resident spouse.

20.     Form N-400 - A lawful permanent resident must file a Form N-400 to
become a United States citizen. A lawful permanent resident married to a United States
citizen, and residing with their petitioning spouse, may file for naturalization after three
years.

21.     The Immigration and Naturalization Act ("INA") allows noncitizens who
have served in the United States armed forces to naturalize more quickly than the
traditional applicant. The armed forces include the Army, Navy, Air Force, Marine
Corps, Coast Guard, Space Force, and certain components of the National Guard and the
Selected Reserve of the Ready Reserve. Typically, a noncitizen is required to serve at
least one year before applying for naturalization. However, for a noncitizen who serves
during a designated "period of hostility," some requirements under the INA may not

apply or are reduced. That is, the noncitizen would be required to be a lawful permanent resident at the time of their interview, or must have been physically present in the United States at the time of enlistment, re-enlistment, extension of service, or induction into the armed forces. September 11, 2001, through the return date of this indictment has been designated as a period of hostility.

22.     Form G-28 - A Form G-28 is used to establish the eligibility of an attorney, or accredited representative, to represent a beneficiary or petitioner in an immigration matter pending before the Department of Homeland Security. A Form G-28 is filed with its related petition, application, or appeal, and must be signed by both the client and the attorney or representative. The Form G-28 also requires the attorney or representative, to provide their full name, mailing address, contact information, licensing authority, bar number, and law firm.

23.     Persons submitting Forms I-130, I-485, I-864, I-751, I-360, N-400, and G-28 sign the forms under penalty of perjury and certify all the information provided is complete, true, and correct.

10

<u>Count One</u>
Conspiracy to Engage in Marriage Fraud and Immigration Fraud
[Violation of 18 U.S.C. § 371 (8 U.S.C. § 1325(c) and 18 U.S.C. § 1546(a))]

24.     Paragraphs 1 through 23 of this indictment are re-alleged and incorporated

by reference as though fully set forth herein.

25.     From on or about June 1, 2008, through on or about November 13, 2023, in

the Northern District of Texas and elsewhere defendants,



11



**Jian Sun (40),**

and

did knowingly and willfully conspire, confederate, and agree with one another and with

persons both known and unknown to the Grand Jury to commit and attempt to commit

the following offenses against the United States, specifically:

     a.    marriage fraud, that is, to enter into marriage for the purpose of evading any

provision of the immigration laws of the United States, in violation of Title 8, United Sates Code, Section 1325(c); and

b.   immigration document fraud, that is, to knowingly make under oath and subscribe as true false statements with respect to material facts in applications, affidavits, and other documents required by the immigration laws and regulations prescribed thereunder, and knowingly present applications, affidavits, and other documents which contain such false statements, in violation of Title 18, United States Code, Sections 1546(a).

## Purpose of the Conspiracy

26.   The principal objects of the conspiracy were to commit marriage fraud and immigration document fraud, by, among other things, arranging fraudulent marriages between foreign nationals and United States citizens, and by preparing and submitting, by mail and by wire, false petitions, applications, and other documents to the USCIS to substantiate the fraudulent marriages and secure adjustment of status for foreign nationals.

27.   The principal purposes of the conspiracy were to enrich the defendants, either monetarily or through some immigration benefits, and to conceal from the USCIS and other immigration and law enforcement authorities information necessary to the fair and objective evaluation of immigration applications.

## Manner and Means

28.   The manner and means by which the defendants, and others sought to accomplish the purpose of the conspiracy included, among other things:

29. The marriage facilitators, along with other coconspirators known and unknown to the Grand Jury, paired noncitizens seeking immigration benefits with United States citizens, arranged fraudulent marriages between the two, and then filed false forms with the USCIS to obtain immigration benefits for the noncitizen. The noncitizen beneficiaries paid fees to the marriage facilitators, who in turn, paid the United States citizens a fee for their role in this unlawful conspiracy.

30. The marriages entered into through this criminal conspiracy were fraudulent marriages evidenced by, among other things:

   a. the purported spouses did not live together and did not intend to live together, contrary to documents and statements submitted to the USCIS;

   b. the purported spouses only met briefly, immediately before they obtained their marriage license;

   c. the purported spouses entered into the marriages pursuant to the financial arrangement described in the following paragraphs; and

   d. the purported spouses entered into the marriages for the primary purpose of circumventing the immigration laws of the United States.

31. In this criminal conspiracy, the beneficiary spouses were noncitizens who were living primarily in the United States under some temporary nonimmigrant status and were primarily from Vietnam and China.

32. In addition to word-of-mouth referrals, defendant

advertised its services in Vietnamese language newspapers, magazines, and online. Defendant                                    also advertised its

14

services on Chinese language social media outlets.

33.     Each beneficiary spouse entered into an agreement with defendant

▊▊▊▊▊▊▊▊▊▊▊▊▊ and defendants ▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊

▊▊▊▊ and others, who acted as marriage facilitators. As part of the agreement, the

beneficiary spouses agreed to pay the criminal organization up to $120,000 to obtain full

lawful permanent resident status. These agreements were prorated such that the

beneficiary spouse agreed to pay a portion of the total fee at various points during the

immigration process, including:

    a.     upon entering into an agreement with ▊▊▊▊▊▊▊▊▊▊▊▊▊▊

    b.     at or near the time of the wedding ceremony and issuance of the marriage
        license;

    c.     at or near the time of the immigration interview; and

    d.     after receiving full lawful permanent resident status.

34.     Defendant ▊▊▊▊▊▊▊▊▊▊▊ typically instructed beneficiaries to

make cash payments. However, numerous beneficiaries and their family members paid

defendant ▊▊▊▊▊▊▊▊▊▊▊▊▊ by check, automated clearing house

("ACH") transfer, and wire transfer. Upon payment, ▊▊▊▊▊▊▊▊▊▊▊ and

▊▊▊▊▊▊▊▊▊▊▊▊▊▊ issued a receipt documenting the payment.

35.     The marriage facilitators, which included among others, defendants ▊

▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊▊▊▊▊ recruited

United States citizens to act as petitioner spouses in fraudulent marriages. These

petitioner spouses were typically promised a total of $30,000 to be disbursed at certain

stages of the immigration process. Specifically, petitioner spouses were to receive $10,000 immediately after entering into the fraudulent marriages, $10,000 after completing the immigration interview, and a final $10,000 once the beneficiary spouse gained lawful permanent resident status.

36.     Once the petitioner agreed to marry, at defendant ████████████ ██ direction, the petitioner and beneficiary spouses, depending on the jurisdiction, typically obtained a marriage license and were married at the local courthouse or clerk's office. ████████████████ traveled across the United States to attend the wedding ceremonies between the petitioner and beneficiary spouses. His wife, defendant ████ ████████████████ often also attended these ceremonies.

37.     After the marriage ceremonies and marriage documents were completed, defendant ████████████████ with the help of defendant ████████████ ████████ and others, staged wedding photographs to lend credibility to subsequent immigration applications. Defendants ████████████████ and ████████ ████████ represented themselves as "Uncle" and "Aunt" of numerous beneficiary spouses or petitioners in these photographs.

38.     Immediately following the wedding, defendant ████████████████ provided the petitioner spouse with $10,000 in cash.

39.     Defendant ████████████████ also advised the couples about maintaining the appearance of a legitimate marriage. For example, ████████████ ██ instructed beneficiary spouses to open joint bank accounts with their petitioner spouses; encouraged the petitioner spouse to add the beneficiary spouse to lease documents

16

and health insurance policies; suggested the couples register vehicles together; and advised them to file taxes jointly. ▓▓▓▓▓▓▓▓▓▓▓▓▓ referred numerous couples to the same two tax preparers, based in Garland, Texas, which preparers in turn, produced fraudulent tax returns. These tax returns were later submitted to the USCIS as purported evidence of a legitimate marriage.

40.   Following the wedding, the beneficiary and petitioner spouses had limited interactions.

41.   Thereafter, the petitioner and beneficiary spouses typically returned to defendant ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ office to sign various immigration documents containing fraudulent information, which were later submitted to the USCIS. Defendant ▓▓▓▓▓▓▓▓▓▓▓▓ arranged for beneficiary spouses to meet with their petitioner spouse to take photographs. Defendant ▓▓▓▓▓▓▓▓▓▓▓▓▓ also arranged meetings at local restaurants and private residences between small groups of fraudulent couples to take staged photographs. Defendants ▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ staff also staged photographs of couples inside ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ office space to create purported evidence of the couples being together, for fake doctor's appointments and other purported immigration milestones.

42.   Typically, within six months of the fraudulent marriage, defendant ▓▓▓ ▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ office staff prepared and submitted to the USCIS, by mail, and otherwise, a Form I-130, Petition for Alien Relative, on behalf of the petitioner spouse, and the accompanying Form I-485, Application to Register Permanent Residence or Adjust Status, on behalf of the beneficiary spouse.

17

43.     The Forms I-130 and I-485, and later the Forms I-360 and I-751, were signed under oath and penalty of perjury under Title 28, United States Code, Section 1746, and included the following questions:

a.      Have you ever submitted fraudulent or counterfeit documentation to any U.S. Government official to obtain or attempt to obtain any immigration benefit, including a visa or entry into the United States;

b.      Have you ever lied about, concealed, or misrepresented any information on an application or petition to obtain a visa, other documentation required for entry into the United States, admission to the United States, or any other kind of immigration benefit;

c.      Have you ever violated the conditions of your nonimmigrant status;

d.      Have you ever committed a crime of any kind (even if you were not arrested, cited, charged with, or tried for that crime); and

e.      Was a fee paid to anyone other than an attorney in connection with this petition?

44.     The applications submitted to the USCIS as a part of this conspiracy included false information, which included, but was not limited to the following:

a.      the defendant spouses claimed that they resided with the spouse at the address listed and that the letters and documents verifying such joint residence were truthful and not fictitious;

b.      the defendant beneficiary spouses were not truthful about overstaying their nonimmigrant visas or entering the United States on a nonimmigrant visa as an

intending immigrant;

c. the defendant spouses claimed that they had entered into marriage in good faith, and during the marriage, they were battered or subjected to extreme cruelty by their spouse;

d. the defendant spouses failed to disclose that they had hired and paid a "preparer;" and

e. the defendant spouses knew that the documents submitted were fraudulent and that the fraudulent documentation was submitted to obtain an immigration benefit.

44. Defendants ▇▇▇▇▇ and ▇▇▇▇▇ frequently served as notaries on the fraudulent applications, for example, Forms I-130, I-485, I-751, and N-400.

45. For those petitioners who did not meet the income requirements to sponsor their beneficiary spouse, defendants ▇▇▇▇▇ and ▇▇▇ ▇▇▇ filed a Form I-864 to serve as a joint sponsor. ▇▇▇▇▇ filed more than 40 Form I-864s in connection with the marriage fraud conspiracy. ▇▇▇▇ ▇▇▇ filed at least three Form-I-864s connected to the scheme. In each form, ▇ ▇▇▇▇ and ▇▇▇▇▇ failed to disclose that they had previously sponsored other noncitizens.

46. Defendant ▇▇▇▇▇ and defendant ▇▇▇▇ ▇▇▇▇ staff also prepared and submitted additional documentation that the USCIS requested during the petition approval process. For example, in support of

19

fraudulent applications, ███████████ and ██████████████████████

staff fabricated, and had individuals sign, affidavits that attested to the legitimacy of the

marriage. ███████████████ also fabricated fraudulent lease documents showing

that the purported couples were renting a room at his residence and transferred the title of

his personal vehicles or orchestrated the transfer of title of his employee's vehicles to

fraudulent couples to make it appear the purported couples shared assets.

47.     Defendant ████████████████ worked with several attorneys in

furtherance of the fraudulent scheme. Attorney-1 was listed as the attorney of record for

the majority of the fraudulent marriages connected to this scheme. Attorney-1 met briefly

with the beneficiary spouses before receiving cash payments directly from ██████████

████████ Accompanying many of the applications prepared by ██████████████

██ and defendant ████████████████████ was a Form G-28 bearing Attorney-

1's signature. On the Form G-28, Attorney-1's bar number and state of licensure were

listed. However, rather than Attorney-1's address and contact information being listed,

the Form G-28 included the address, phone number, and email address of ████████

███████ and ████████████████████████.

48.     Prior to an immigration interview by the USCIS, defendant ████████

████████ held coaching sessions to prepare beneficiary and petitioner spouses for the

meeting with USCIS.  During these coaching sessions, ████████████████ used

written lists of practice questions that the purported couples were required to memorize

and answer. The purported couples were also told to memorize a fictional story about

their relationship, that was later recited to Attorney-1 and to immigration officers with the

USCIS.

49.     Defendant  maintained a calendar for the USCIS interviews and communicated with both beneficiary and petitioner spouses to ensure that they were aware of meetings and deadlines.

50.     Defendant appeared as an interpreter at the USCIS interview for at least one fraudulent couple.

51.     Attorney-1 and Attorney-1's law partners appeared as the attorneys at the USCIS interviews on behalf of some of the fraudulent couples. Attorney-1 claimed that the fraudulent applications were prepared by Attorney-1's office; however, the documents included contact information which corresponded to defendants

and

52.     Defendants                              ,

, and others assisted certain beneficiary spouses with obtaining Green Cards under VAWA, through the submission of fraudulent Forms I-360. Forms I-360 were typically submitted when the petitioner spouse stopped responding, became unavailable to follow through with the USCIS interview, or when previous applications were withheld from adjudication or denied by USCIS.

53.     The fraudulent VAWA claims were templated as to facts. That is, the fraudulent VAWA applications mimicked each other as to both form and substance factually. Further, often the VAWA applications had the same medical professionals and purported witnesses to the claimed abuse. Defendants                         and

filed numerous sworn affidavits claiming to be witnesses of

physical abuse between the beneficiary and petitioner spouses. Defendant

was listed as a "translator" on many of the fraudulent attestations.

54. Once immigration status was granted or if the petitioner spouse became non-responsive, defendants                          and                          referred the spouses to divorce attorneys. Attorney-1 assisted the majority of the fraudulent couples in obtaining divorces. Attorney-1 served as the attorney and appeared in Dallas County courts in 46 divorces connected to the marriage fraud scheme.

55. On four other occasions, Attorney-1 served as the attorney of record when the beneficiary spouse was divorcing an original, non-fraudulent spouse. Within less than a year of that original divorce, the beneficiaries married again, but this time with a petitioner spouse who was a member of the conspiracy.

56. In the court filings related to these fraudulent marriages, Attorney-1's bar number was used; however, the address, phone number, and email address of defendants

and                          were listed.

57. Defendant                          kept a "Divorce Tracker" on her cellular telephone, where she notated each couples' progress towards receiving a divorce.

frequently checked in with attorneys to check on the status of cases, including having a beneficiary-spouse's name removed from a birth certificate.

58. During the course of the conspiracy, defendant

exercised control over defendant                          financial accounts.

59. As a part of the conspiracy, defendants

and                          were paid large sums of money

from defendant ████████████████████ s multiple bank accounts which money

represented the proceeds of the conspiracy. Using those proceeds, ████████████

██ and ████████████ made significant contributions to investment accounts,

mortgage accounts, and cryptocurrency exchange platforms. Further, on multiple

occasions, ████████████ issued corporate checks for himself, ████████

████████ and ████████████████

     60.    During the course of the conspiracy, between in or about June 2008 and

November 2023, defendants ████████████ , ████████████ , ████

████████████ , and others arranged and facilitated fraudulent marriages and

submitted fraudulent immigration documents for at least 79 noncitizens, generating

proceeds for ████████████ , ████████████ , ████████████

████████ and ████████████████

23

## Overt Acts

61.     In furtherance of the conspiracy and to affect its unlawful objects, the

defendants and other conspirators committed and caused to be committed the following

overt acts in the Northern District of Texas and elsewhere:

62.     On or about the dates and locations listed below, and managed, arranged,

and facilitated by ████████████████ , ████████████████ , ████████████████████

████████ , and ████████████████████████ , the below identified defendants and

individuals entered into fraudulent marriages for the purpose of evading provisions of the

immigration laws of the United States:

|   | Defendants | Date of Marriage (on or about) | Location of Marriage |
|---|---|---|---|
| a | ████████████████████ | 3/21/2012 | Vietnam |
| b | ████████████ | 6/7/2012 | Dallas County, TX |
| c | ████████████████ | 8/29/2012 | Tarrant County, TX |
| d | ████████████████ United States Citizen #1 | 9/4/2012 | Dallas County, TX |
| e | ████████████ | 10/22/2012 | Dallas County, TX |
| f | ████████████ | 7/18/2013 | Dallas County, TX |
| g | ████████████ United States Citizen #2 | 10/9/2013 | Clayton, MO |
| h | ████████████████ | 4/22/2014 | Travis County, TX |

24

| | Defendants | Date of Marriage (on or about) | Location of Marriage |
|---|---|---|---|
| i | | 10/13/2014 | Sarasota, FL |
| j | United States Citizen #3 | 6/30/2015 | St. Mary Parish, LA |
| k | | 9/3/2015 | Dallas County, TX |
| l | | 1/8/2016 | Dallas County, TX |
| m | United States Citizen #4 | 3/31/2016 | Dallas County, TX |
| n | | 6/9/2016 | Dallas County, TX |
| o | | 11/1/2016 | Dallas County, TX |
| p | United States Citizen #5 | 11/1/2016 | Dallas County, TX |
| q | | 12/2/2016 | Dallas County, TX |
| r | | 12/15/2016 | Richardson, TX |
| s | | 12/30/2016 | Dallas County, TX |
| t | | 4/7/2017 | Dallas County, TX |
| u | | 6/27/2017 | Tarrant County, TX |
| v | **Jian Sun (40)** | 10/23/2017 | Dallas County, TX |
| w | | 1/29/2018 | Dallas County, TX |
| x | | 5/15/2018 | Dallas County, TX |

|    | **Defendants** | **Date of Marriage (on or about)** | **Location of Marriage** |
|----|----------------|------------------------------------|--------------------------|
| y  |                | 8/22/2018 | Dallas County, TX |
| z  |                | 9/10/2018 | Dallas County, TX |
| aa |                | 10/15/2018 | Dallas County, TX |
| bb |                | 10/19/2018 | Richardson, TX |
| cc |                | 12/4/2018 | Denver, CO |
| dd |                | 3/13/2019 | Dallas County, TX |
| ee |                | 6/20/2019 | St. Petersburg, FL |
| ff |                | 7/30/2019 | Dallas County, TX |
| gg |                | 1/13/2020 | Denton County, TX |
| hh | United States Citizen #6 | 6/17/2020 | Dallas County, TX |



60.     On or about the dates listed below, defendants ⬛ and

⬛ did knowingly make false statements under oath on a Form I-864,

in cases pending before the USCIS, claiming that they had the financial means to support

the following defendant beneficiary spouses, and ⬛ and ⬛

⬛ failed to declare that they had previously sponsored other individuals:

| | Defendant Sponsor | Defendant Beneficiary | Date I-864 Received by the USCIS (on or about) |
|---|---|---|---|
| a | ██████████ | ██████████ | 10/6/2015 |
| b | ██████████ | ██████████ | 11/18/2016 |
| c | ██████████ | ██████████ | 2/19/2017 |
| d | ██████████ | ██████████ | 2/13/2017 |
| e | ██████████ | ██████████ | 2/14/2017 |
| f | ██████████ | ██████████ | 4/14/2017 |
| g | ██████████ | ██████████ | 5/11/2017 |
| h | ██████████ | **Jian Sun (40)** | 11/20/2017 |
| i | ██████████ | ██████████ | 10/5/2018 |
| j | ██████████ | ██████████ | 12/3/2018 |
| k | ██████████ | ██████████ | 12/7/2018 |
| l | ██████████ | ██████████ | 12/21/2018 |
| m | ██████████ | ██████████ | 2/7/2019 |
| n | ██████████ | ██████████ | 5/6/2019 |
| o | ██████████ | ██████████ | 11/15/2019 |
| q | ██████████ | ██████████ | 12/11/2019 |



61.     On or about December 4, 2018, defendant ███████████ married

defendant ███████████ a United States citizen, in Denver, Colorado.

62.     On or about the same day, December 4, 2018, defendant ███████████

27



caused $9,500 to be deposited into defendant ███████

███ account at a Bank of America location in Denver, Colorado.

63.    On or about January 31, 2019, defendant ███████████

caused a Form I-130 on behalf of defendant ███████████ to be submitted to the

USCIS, as a part of ████████ AOS packet.

64.    On or about the same day, January 31, 2019, defendant ████████

███ caused a Form I-485 to be submitted to the USCIS, as a part of ████████ AOS

packet.

65.    On or about January 31, 2019, as part of her AOS packet, defendant

████████████ presented statements from a joint bank account held between her

and defendant ████████████ bearing the notary stamp of defendant ███

████████

66.    On or about the same date, January 31, 2019, defendant ███████

███ also presented numerous photographs with her AOS packet, including images of

defendants ████████ and ████████████ at the purported

wedding of defendants ████████ and ████████████ where defendants

████████ and ████████ are labeled as the "Uncle" and "Aunt" of ████████

67.    On or about January 31, 2019, Attorney-1, defendants ████████

████████ ████████ ████████ , and ████████

████████ caused a Form G-28 listing Attorney-1 as the attorney of record for

████████ and ████████ to be submitted to the USCIS, which accompanied defendants

████████ AOS packet.

28

68.    On or about June 27, 2019, defendants _____ and _____

_____ appeared for their immigration interview with the USCIS.

69.    On or about July 17, 2019, defendant _____ withdrew

$20,000 cash from a Chase Bank account in Denver, Colorado.

70.    That same day, on or about July 17, 2019, defendant _____

_____ deposited $10,000 in cash into defendant _____

bank account at a Bank of America location in Denver, Colorado.

71.    On or about December 2, 2019, after USCIS denied defendant _____

_____ initial AOS packet, defendant _____ caused to be

filed a Form I-290B, Notice of Appeal or Motion, in which Attorney-1 claimed that "the

petitioner and beneficiary did not attend the second interview scheduled for August 20,

2019, because no one involved in this matter received notice of interview."

72.    On or about December 4, 2019, defendant _____ signed

and caused to be submitted to the USCIS, a Form I-864 as a joint sponsor of defendant

_____ The Form I-864 contained false information by omitting any

reference to the previous individuals she had sponsored.

73.    On or about December 13, 2019, defendant _____ caused

a second AOS packet to be submitted to the USCIS, which included the Form I-864

signed by defendant _____

74.    On or about February 9, 2021, during a site visit by immigration officers

with the USCIS, defendant _____ spoke with immigration officers by

cellular telephone. _____ stated she was not at home, she was not sure if she wanted

29

to talk with the officers, and she was going to call her lawyer first.

75.     On or about February 9, 2021, at approximately 10:20 a.m. defendant

███████████         contacted defendant ███████████         via telephone.

Defendants ███████ and ███████ exchanged approximately seven calls that day.

76.     On or about May 28, 2021, defendant ███████████ caused to be

submitted a fraudulent VAWA application in which she alleged that she had been the

victim of physical abuse at the hands of defendant ███████████ A

review of ███████ affidavit reveals boilerplate statements with common verbiage

from other fraudulent VAWA filings associated with defendants ███████████

and ███████████

77.     On or about May 28, 2021, in support of the fraudulent VAWA

application, defendants ███████████ and ███████████

submitted an affidavit claiming they were witnesses to the alleged abuse against

defendant ███████████ by defendant ███████████

78.     On or about May 28, 2021, another coconspirator, known to the Grand

Jury, submitted an affidavit claiming to have been a witness to the abuse against

defendant ███████████ by defendant ███████████

79.     On or about May 28, 2021, defendant ███████████ notarized

the affidavits of defendants ███████████ and ███████████

and the coconspirator in support of defendant ███████████ fraudulent VAWA

application.

80.     On or about October 21, 2021, defendant ███████████

represented by Attorney-1, caused to be filed a petition for divorce against defendant

████████████ in Dallas County, Texas.

81.    On or about January 2, 2019, defendant ████████████ divorced her first

spouse in China.

82.    Three days later, on or about January 5, 2019, defendant ████████████

entered the United States.

83.    On or about June 20, 2019, defendant ████████████ married defendant

████████████ in Saint Petersburg, Florida.

84.    Defendants ████████████ ████████████ and

other coconspirators were present at the time of defendant ████████████ and

defendant ████████████ purported wedding in Florida.

85.    The following day, on or about June 21, 2019, defendant ████████████

obtained a $25,000 cashier's check paid to the order of defendant ████████████

████████████

86.    On or about June 21, 2019, defendant ████████████ caused a

cash withdrawal of $9,500 from a bank in St. Petersburg, Florida from defendant'

████████████ account.

87.    On or about June 24, 2019, defendant ████████████ caused

defendant ████████████ $25,000 cashier's check to be deposited into defendant

████████████ Bank of America account.

88.    On or about July 2, 2019, defendant ████████████ signed

and caused to be submitted a Form I-130 on behalf of defendant ████████████

31

89.     On or about July 2, 2019, defendant ▮▮▮▮ signed and caused to be submitted a Form I-485.

90.     On or about July 2, 2019, defendants ▮▮▮▮ and ▮▮▮▮ ▮▮▮▮ caused a Form G-28 listing Attorney-1 as the attorney of record for both ▮▮▮▮ and ▮▮▮▮.

91.     On or about July 2, 2019, as a part of the AOS packet, defendant ▮▮▮▮ ▮▮▮▮ caused bank statements for a joint account and utility bills held by her and defendant ▮▮▮▮ to be submitted to USCIS.

92.     Also on or about July 2, 2019, as a part of the AOS packet, defendant ▮▮▮▮ caused to be submitted numerous photographs, including images of defendants ▮▮▮▮ ▮▮▮▮ ▮▮▮▮, ▮▮▮▮, ▮▮▮▮, and another known coconspirator, at various locations in Saint Petersburg, Florida, during and after the wedding of defendants ▮▮▮▮ and ▮▮▮▮ Defendant ▮▮▮▮ is labeled in the photographs as defendant ▮▮▮▮ "friend."

93.     On or about July 2, 2019, the coconspirator, who identified himself as defendant ▮▮▮▮ nephew, caused to be submitted an affidavit attesting to the validity of the marriage.

94.     On or about July 2, 2019, defendant ▮▮▮▮ notarized many documents included in the AOS packet, including the coconspirator's affidavit.

95.     On or about March 24, 2020, defendant ▮▮▮▮ received a \$10,000 personal check from defendant ▮▮▮▮

96.     On or about July 13, 2020, defendant ▓▓▓▓▓▓ sent defendant ▓
▓▓▓▓▓▓ $5,000.

97.     On or about September 4, 2020, defendant ▓▓▓▓▓▓ sent defendant
▓▓▓▓▓▓ another $5,000.

98.     On or about September 17, 2020, defendant ▓▓▓▓▓▓ purchased
three U.S. Postal Money Orders paid to the order of defendant ▓▓▓▓▓▓
each for $1,000.

99.     On or about October 22, 2020, defendant ▓▓▓▓▓▓ purchased three
U.S. Postal Money Orders paid to the order of defendant ▓▓▓▓▓▓ for $500,
$1,000, and $1,000, respectively.

100.    On or about February 22, 2021, a check was issued out of a bank account
held in Attorney-1's name to a law firm in Tampa, Florida, that included a memo line that
stated, "Liping Tian."

101.    On or about March 5, 2021, defendants ▓▓▓▓▓▓ and ▓▓▓
▓▓▓▓▓▓ were interviewed by the USCIS in Tampa, Florida. ▓▓▓ and
▓▓▓▓▓▓ were both represented by an attorney from the Tampa law firm, who
indicated that the firm was contacted by Attorney-1's law office to appear with the
couple.

102.    On or about or March 5, 2021, during defendant ▓▓▓▓▓▓
▓ USCIS interview, ▓▓▓▓▓▓ made several false statements to the USCIS officer.
That is, defendant ▓▓▓▓▓▓ was initially evasive about the nature of his relationship
with defendant ▓▓▓▓▓▓ and Attorney-1. ▓▓▓▓▓▓ ultimately

33

admitted that a coconspirator had introduced him to defendant ▮▮▮▮▮; that he had

never personally spoken with Attorney-1; and that defendant ▮▮▮▮▮ was a notary for

Attorney-1 who was responsible for bringing immigration paperwork for defendant

▮▮▮▮▮ to sign.

103.    On or about March 11, 2021, defendant ▮▮▮▮▮▮▮▮▮▮

withdrew his Form I-130 petition on behalf of defendant ▮▮▮▮▮▮

104.    On or about April 27, 2021, defendant ▮▮▮▮▮▮▮▮▮,

represented by Attorney-1, caused to be filed a petition for divorce against defendant

▮▮▮▮▮▮ in Dallas County, Texas.

105.    On or about June 4, 2021, less than a month after the USCIS denied

defendant ▮▮▮▮▮ AOS packet, ▮▮▮▮ caused to be submitted a VAWA

application which claimed physical abuse suffered at the hands of defendant ▮▮▮

▮▮▮▮▮▮ which included boilerplate statements with common verbiage from

other VAWA filings associated with defendants ▮▮▮▮▮▮ and ▮▮▮▮

▮▮▮▮

106.    Defendant ▮▮▮▮▮ was listed as the translator for defendant

▮▮▮▮▮ affidavit claiming abuse in support of her VAWA application.

107.    Defendants ▮▮▮▮▮ and ▮▮▮▮▮▮▮

executed and caused to be submitted a joint affidavit claiming they were witnesses to the

alleged abuse against defendant ▮▮▮▮▮ by defendant ▮▮▮▮▮

▮▮▮▮

108.    Defendant ▮▮▮▮▮ notarized both affidavits.

34

109.     On June or about 15, 2021, defendant                          caused to be filed

an appeal of the denial of her AOS packet.

110.     On November 3, 2021, defendant                                      executed

and caused to be submitted an Affidavit for Prove-Up of Agreed Divorce, notarized by

defendant                               with the 302nd Judicial District Court in Dallas

County.

111.     The Grand Jury hereby alleges and incorporates, by reference herein, all of

the allegations set forth in Counts 2 through 35 of this indictment as overt acts of the

conspiracy.

All in violation of 18 U.S.C. § 371 (8 U.S.C. § 1325(c) and 18 U.S.C. § 1546(a)).

Counts Two Through Thirty-Five
False and Fraudulent Statements in Immigration Documents
[Violation of 18 U.S.C. §§ 1546(a) and 2]

112.    Paragraphs 1 through 23 and 61 through 111 of this indictment are re-

alleged and incorporated by reference as though fully set forth herein.

113.    On or about the dates set forth below, in the Dallas Division of the

Northern District of Texas and elsewhere, the defendants identified below, aided and

abetted by defendants,



and others, known and unknown to the Grand Jury, did knowingly present and make

under oath and subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false

statement with respect to a material fact in an application, affidavit, and document

required by the immigration laws and regulations prescribed thereunder, that:

a.    The defendants claimed they resided with the spouse at the address listed
      and that the letters and documents verifying such joint residence were
      truthful and not fictitious;

b.    The defendants claimed they had entered into marriage in good faith, and
      during the marriage, they were battered or subjected to extreme cruelty by
      their spouse;

c.    The defendants answered "no" to the following questions under oath and
      penalty of perjury:

      i.    Have you ever submitted fraudulent or counterfeit documentation to

36

any U.S. Government official to obtain or attempt to obtain any

immigration benefit, including a visa or entry into the United States;

ii.     Have you ever lied about, concealed, or misrepresented any

information on an application or petition to obtain a visa, other

documentation required for entry into the United States, admission to

the United States, or any other kind of immigration benefit;

iii.    Have you ever violated the conditions of your nonimmigrant status;

iv.     Have you ever committed a crime of any kind (even if you were not

arrested, cited, charged with, or tried for that crime); and

v.      Was a fee paid to anyone other than an attorney in connection with this

petition?

The defendants described below knew the statements were false because:

a.      The defendants knew they did not reside with the spouse at the address

indicated and that the documents stating they did were not truthful;

b.      The defendants knew that they had violated the terms and conditions of

their nonimmigrant visas;

c.      The defendants knew they had not been battered or subjected to extreme

cruelty by their United States citizen spouse and that documents stating

they were abused were not truthful;

d.      The defendants knew they had paid money to

██ to prepare petitions on their behalf;

e.      The defendants knew that the documentation submitted was fraudulent and

37

that the documentation was submitted to obtain an immigration benefit;

f.      The defendants knew they had lied and made misrepresentations in the

documentation submitted for immigration benefits, and that they had

engaged in marriage fraud.

| Counts | Defendant(s) | Document(s) containing false statement | Date of application |
|--------|--------------|----------------------------------------|---------------------|
| 2 | | I-485 I-130 | 1/28/2019 |
| 3 | | I-485 I-360 | 2/5/2019 |
| 4 | | I-485 I-130 | 2/5/2019 |
| 5 | | I-751 | 3/22/2019 |
| 6 | | I-485 I-360 | 4/5/2019 |
| 7 | | I-485 I-130 | 5/3/2019 |
| 8 | | I-485 I-130 | 7/11/2019 |
| 9 | | I-485 I-130 | 11/12/2019 |
| 10 | | I-485 I-360 | 12/4/2019 |
| 11 | | I-485 I-130 | 12/6/2019 |
| 12 | | I-485 I-360 | 12/21/2019 |
| 13 | | N-400 | 1/30/2020 |

| Counts | Defendant(s) | Document(s) containing false statement | Date of application |
|--------|-------------|----------------------------------------|---------------------|
| 14 | ███████████████ | I-485<br>I-130 | 2/5/2020 |
| 15 | ███████████████ | I-485<br>I-360 | 6/18/2020 |
| 16 | ███████████████ | N-400 | 6/18/2020 |
| 17 | ███████████████ | I-485<br>I-360 | 7/28/2020 |
| 18 | ███████████████ | I-485<br>I-130 | 8/28/2020 |
| 19 | ███████████████ | N-400 | 11/23/2020 |
| 20 | ███████████████ | I-751 | 12/3/2020 |
| 21 | ███████████████ | I-485<br>I-360 | 3/11/2021 |
| 22 | ███████████████ | I-485 | 3/21/2021 |
| 23 | **Jian Sun (40)** | I-751 | 3/22/2021 |
| 24 | ███████████████ | I-485<br>I-360 | 5/28/2021 |
| 25 | ███████████████ | N-400 | 7/14/2021 |
| 26 | ███████████████ | I-485<br>I-360 | 8/16/2021 |
| 27 | ███████████████ | I-485<br>I-360 | 12/7/2021 |
| 28 | ███████████████ | I-485<br>I-360 | 3/8/2022 |
| 29 | ███████████████ | I-485 | 5/17/2022 |
| 30 | ███████████████ | I-485<br>I-360 | 5/25/2022 |
| 31 | ███████████████ | I-485<br>I-360 | 8/8/2022 |
| 32 | ███████████████ | I-485<br>I-360 | 1/13/2023 |

| Counts | Defendant(s) | Document(s) containing false statement | Date of application |
|--------|--------------|----------------------------------------|---------------------|
| 33 |  | I-485<br>I-360 | 1/25/2023 |
| 34 |  | N-400 | 10/2/2023 |
| 35 |  | I-751 | 11/13/2023 |

All in violation of 18 U.S.C. §§ 1546(a) and 2.

Count Thirty-Six
Conspiracy to Unlawfully Procure Citizenship or Naturalization
[Violation of 18 U.S.C. § 371 (18 U.S.C. § 1425(b))]

114.   Paragraphs 1 through 23 and 28 through 111 of this indictment are re-

alleged and incorporated by reference as though fully set forth herein.

115.   From on or about June 2, 2008, through on or about November 13, 2023, in

the Dallas Division of the Northern District of Texas and elsewhere defendants,



did knowingly conspire, confederate, and agree with each other and with others known and

unknown to the Grand Jury to commit the following offense against the United States: to

knowingly procure, obtain, and apply for and attempt to procure, obtain, and apply for,

contrary to law, the naturalization of any person, or documentary or other evidence of

naturalization or of citizenship, in violation of Title 18, United States Code, Section

1425(b).

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1425(b)).

Count Thirty-Seven
Unlawful Procurement of Citizenship or Naturalization
[Violation of 18 U.S.C. §§ 1425(b)]

116.    On or about June 29, 2019, in the Dallas Division of the Northern District

of Texas and elsewhere, the defendant, ▮▮▮▮▮▮▮, knowing he was not entitled to

naturalization and citizenship, did knowingly procure, obtain, and apply for, and attempt

to procure, obtain, and apply for naturalization and citizenship for himself, in violation of

18 U.S.C. § 1425(b).

Forfeiture Notice
[18 U.S.C. § 982(a)(6)]

117.   Upon conviction of any of the offenses alleged in Counts One through

Thirty-Seven of this indictment, and pursuant to 18 U.S.C. § 982(a)(6), the defendants

shall forfeit to the United States of America any conveyance, including any vessel,

vehicle, or aircraft, used in the commission of the respective offense of which the person

is convicted; any property, real or personal, that constitutes or is derived from or is

traceable to the proceeds obtained directly or indirectly from the commission of the

respective offense; and any property, real or personal, used to, or intended to be used to

facilitate, the commission of the respective offense.

118.   Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if

any of the above property subject to forfeiture, as a result of any act or omission of the

defendant, cannot be located upon the exercise of due diligence; has been transferred or

sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the

Court; has been substantially diminished in value; or has been commingled with other

property which cannot be subdivided without difficulty, it is the intent of the United

States of America to seek forfeiture of any other property of the defendant up to the value

of the property subject to forfeiture.

A TRUE BILL



_____
FOREPERSON OF THE GRAND JURY

LEIGHA SIMONTON
UNITED STATES ATTORNEY

Michelle A. Winters
Assistant United States Attorney
New York Registration No. 5327473
1100 Commerce, Third Floor
Dallas, TX 75242
Telephone: 214-659-8600
Facsimile: 214-659-8805
E-mail: michelle.winters@usdoj.gov

Abigail Policastro
Assistant United States Attorney
Texas Bar Number 24072505
1100 Commerce, Third Floor
Dallas, TX 75242
Telephone: 214-659-8600
Facsimile: 214-659-8805
E-mail: abby.policastro@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.





**JIAN SUN (40),**
a/k/a Jay Sun

 and

INDICTMENT

18 U.S.C. § 371 (8 U.S.C. § 1325(c) and 18 U.S.C. § 1546(a))
Conspiracy to Engage in Marriage Fraud and Immigration Fraud
(Count 1)

18 U.S.C. §§ 1546(a) and 2
False and Fraudulent Statements in Immigration Documents
(Counts 2 through 35)

18 U.S.C. § 371 (18 U.S.C. § 1425(b))
Conspiracy to Unlawfully Procure Citizenship or Naturalization
(Count 36)

18 U.S.C. §§ 1425(b)
Unlawful Procurement of Citizenship or Naturalization
(Count 37)

18 U.S.C. § 982(a)(6) and 28 U.S.C. § 2461(c)
(Forfeiture Notice)

37 Counts

A true bill rendered

-------------------------------------------------------------------------

DALLAS                                                    FOREPERSON

Filed in open court this 23rd day of January, 2024.

-------------------------------------------------------------------------

**Warrants to be Issued**

-------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending

# United States District Court
## Northern District of Texas
### Dallas Division

UNITED STATES OF AMERICA

V.

Jian Sun
a/k/a
Jay Sun

**SEALED WARRANT FOR ARREST**

CASE NUMBER: 3:24-CR-020-L (40)

To: The United States Marshal
and any Authorized United States Officer

MAG. CASE NUMBER: _____

YOU ARE HEREBY COMMANDED to arrest  Jian Sun

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☒ Sealed Indictment  ☐ Information  ☐ Complaint  ☐ Order of court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with:

Conspiracy to Engage in Marriage Fraud and Immigration Fraud; False and Fraudulent Statements in Immigration Documents

in violation of Title   18

United States Code, Section(s)

371 (8 U.S.C. § 1325(c) and 18 U.S.C. § 1546(a)); 1546(a) and 2

| | |
|---|---|
| Karen Mitchell, U.S. District Court Clerk | _Karen Mitchell_ (signature) |
| Name and Title of Issuing Officer | Signature of Issuing Officer |
| U.S. Magistrate Judge Rebecca Rutherford | 1/23/2024          Dallas, TX |
| Judge | Date          Location |
| s/A. Lowe | |
| (By) Deputy Clerk | |

## RETURN

This warrant was received and executed with the arrest of the above-named defendant at

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |